Systems, Inc. We're going to wait until the courtroom settles down so you'll have full attention before we begin. All right. We'll hear first from Mr. Graham. Good morning. My name is Kevin Graham, and I represent the appellant, Thomas O'Neal, a former employee of three of the appellees. The district court made at least three reversible errors in this case. First, the court erred by enforcing the terms of a settlement agreement that resolved Mr. O'Neal's Fair Labor Standards claims against his employer without that agreement being either reviewed by the Department of Labor or approved by a court as required by this court's Lynn's Food Doctrine. Excuse me. Would it have been a violation of the confidentiality agreement to share any part of the agreement besides or even maybe including the FLSA portion with the court? That would be part of a review that should have been undertaken by the court, and there are many district courts that have determined that confidentiality clauses are not consistent with the Fair Labor Standards Act. Well, let me ask you something. Even if it were a violation of that, isn't there a procedure under the agreement by which you could obtain exemption from it, that is, in order to have the court review the agreement? And alternatively, if there isn't and Lynn Foods and the Supreme Court precedent require review, then isn't that a problem under the agreement? Yes, because the court failed to make a review of that confidentiality provision as well as the general release and the attorney fees. All of those are required by Lynn's Food and, most recently, Nall v. Mall Hotel, that if a decision or if a agreement deals with Fair Labor Standards Act, that agreement must be approved. But even if this court, the workaround that the district court tried was not effective because it misapplied the severability clause in the party's contract. The severability clause required that if you're going to remove by virtue of unenforceability, you have to actually excise that provision from the agreement. You can't just interpret it that way. And when you remove the release in this case, all of the releases are removed from the settlement agreement, which obviously would frustrate the entire purpose of the agreement. So the workaround that the district court applied, obviously the district court disagreed with the basis for Lynn's Food and tried to do a workaround by using the severability clause. Well, I'm not, so let's talk about why, I mean, so Lynn's Food is, the idea is that, and I think it makes some sense that the federal labor laws are meant to protect workers, you know, from not getting overtime, from not getting a minimum wage, things like that. And those are, you know, I mean, those are voluntary things that workers would do anyway, which is agree to work a job without overtime or agree to work a job for a substandard wage. And so the idea is that if you're then going to give those claims away in some other sort of transaction, a judge has to review that to make sure that that contract, you know, is okay. I don't see a basis for extending that to, say, all other claims that just happen to be associated with Fair Labor Standard Act claims. There's some kind of review just because you have some Fair Labor Standard Act claims kind of associated with other claims. Well, the problem with that is they're always interrelated. So if you're trying to evaluate, for example, in this case, had they segregated out the settlement amount for the non-FLA claim, Fair Labor Standards Act claims, then arguably the court could have evaluated whether the amount being paid was sufficient to satisfy the analysis of fair and reasonable or not being abused by the bargaining positions of employer-employee. But that wasn't done here. I guess my question is, doesn't Lynn's Food say you can't settle FLSA claims without judicial review of the settlement agreement? I see that. I don't see something in Lynn's Food that says you can't settle other claims. I guess you're not trying to bring, maybe this is the way to ask this, you're not trying to bring, re-bring your FLSA claims, right? No. Okay. That seems like you could do that because they were improperly settled. You're trying to bring other claims, right? Yes. I mean. So, but those don't have to be reviewed by a court. Well, Your Honor, if you were to make that the law, if you were to say if there's multiple claims, then the, I believe you would run into trouble there because how are you going to evaluate whether you've got a fair settlement for the FLA, the Fair Labor Standards Act claim? Well, you wouldn't, I mean, the rule would be, look, if you're an employer and you settle FLSA claims without going through the Lynn's Food process, you haven't settled anything. You gave them $50,000 and they can still bring those FLSA claims against you. That would be the rule. But, but you're not, you're, you're trying to bring claims that there was no reason for any judge to ever review the settlement about on the basis of the failure to review FLSA claims. Yeah. I believe the entire, the entire agreement is, is not, does not comply with, with Lynn's Food. But even if the court was. Ultimately, I think that the rule, I think the rule you're asking for here would probably, likely benefit your client. But in the aggregate, if you're, if you're, if the thinking is, these are, these are all kind of built into the larger settlement, right? So if the employer thinks, well, I settled the FLSA claims for this and that was worthwhile because I got these other, that helped me get to the total bargain that got me to a favorable result over here, right? Yes. But if, if you then hive off the Lynn's Foods claims, right? And maybe, maybe those have to be renegotiated, but you still keep all these other benefits that you gave to the workers on the other side of things, then why doesn't that ultimately benefit the workers, right? If the workers got less for their FLSA claims in order to get more on these other claims, then segmenting off the FLSA claims just means they got the more over here, but then they get something fair over there too. How do you know that without reviewing it? Here's the problem that I'm thinking, right? So let's say that we were to adopt this, this rule that has been suggested, then in this case, how would that play out? Does that mean that the $50,000 that your client got, we credit all of it to the non-FLSA claims or do we have to then figure out what is attributable to the non-FLSA claims and some to the FLSA? And if we have to do that, isn't that a problem under Lend-Foods? I believe it to be, and that's the issue. But if we don't do that and we just say, okay, well, you employer did this at your own risk. You knew about the rule. So we're just going to say that everything in this contract, the settlement agreement must have been for things other than the FLSA claims and we're going to allow Mr. O'Neill to re-bring, I'm sorry, we're going to allow the, I guess it would be, I'm sorry, I don't remember your client's name. Oh, Mr. O'Neill. Tom O'Neill. Oh, it is. Okay, sorry. We're going to allow Mr. O'Neill then to go ahead and bring his FLSA claims anew against you as though nothing has ever been paid on them. Is that a problem? Well, I think the $50,000 goes back to the employer. But even if this court now devotes my time.  Why would that be? I don't understand why that would be, because there would still be valuable consideration. You would have settled all other claims. And I understand the court's position on that. But answer the question. Why would that be? Why would, why, if the problem with the settlement is the failure to get judicial review of FLSA claims, why would there still not be consideration? You've settled all other conceivable claims. Because the whole agreement is nullity. Well, let me ask you this. Okay, so this hypothetical happens every day, okay? So there's an employee who is going to be terminated. And in lieu of termination, what the employer does is say, look, you know, things haven't gone well here. And frankly, the employer's a little bit worried about like Title VII liability or something like that. And so they say, look, here's a, here's an agreement. It's a severance agreement. We'll pay you six months of salary if you will sign this agreement that says you're not going to sue us, right? And the agreement just says like, you're not going to bring any claims against us. You waive everything. You know, anything that we've done is fine and we're paying you six months of salary. And the employee signs that agreement. Well, it turns out that the employee had FLSA claims that they could bring. What happens? Well, I think they have a raised judicata issue if they settle it. Raised judicata issue. Well, I mean, if they, if they settle without bringing the Fair Labor Standards Act claim, I think they. But how could that be if you can't, if you can't settle your FLSA claims without court approval? Right. I mean. I understand you're saying, well, there weren't any brought, but. But. But. That, that, that's what Lynn Spooge has meant to stop, right? And so why wouldn't the right result in that situation be, well, look, you know, you said you settled all of your claims for your six months salary. Well, look, that includes your Title VII claims and any like, I don't know, defamation claims you could bring or whatever, but you can still bring your FLSA claims. Why isn't that the right result? And not, if I want to bring my FLSA claims, I have to give back the six months salary to my employer because it's all a nullity. I understand the court's position. I noticed my time is limited. May I? I'd really like you to answer my question. I think that the analysis that you've made, if you, if you determine that it's not necessary to review based on the presence, then your analysis is correct. Okay. But I want to say that even if that's true, we have an issue because the court misapplied. I mean, the court committed reversible error by interpreting the prior written notice requirement in the confidentiality agreement as being a, not having been complied with. I mean, our position is they failed to comply with it. The analysis the court made was a situation in which they focused on the word however, which was a non-essential conjunctive adverb that is between commas. And by virtue of grammar, rules of grammar, the disjunctive adverb, however, has the effect of relating to the earlier by way of clarification and transition to the following provision that relates to advising, being able to tell bill collectors, federal government, state governments about the contents of the agreement. We believe that that was a misinterpretation requiring reversal. And finally. I think the other side's argument is that that was an affirmative defense and you're saying it's not, right? It's not because under Florida rules, and particularly 416, there's a jury instruction 416.4 that makes it very clear that in order for you to successfully bring an action for breach of contract, which is what we're dealing with here, you must, in order for you to be able to do that, you must be able to prove that you performed all of the covenants in the agreement that you were seeking to enforce. They did not do that by virtue of the fact that they have failed to give written notice before disclosing the terms of the agreement in the Missouri courts. All right. Thank you very much, Mr. Graham. You've reserved three minutes for rebuttal. Mr. Moore. Good morning, Your Honors. May it please the Court. Thomas O'Neill asked this Court to do something that has never been done before, to invalidate a legitimate bargain-force settlement of non-FLSA claims because the parties did not obtain court approval. There's no legal basis for that remedy. There's no policy basis for that position, and there are no facts in this case that would support that kind of relief. What the district court said was you can have your enforceable settlement with all $50,000 of the settlement dollars that you paid to compromise non-FLSA claims, but you have not effectively released the FLSA claims. So if Mr. O'Neill had wanted to, he could have refiled those claims. There are arguments about whether or not that's the right result, but the facts of this case are that those FLSA claims were never refiled. So taking that and setting it aside, it's really academic at this point. Okay, but here's the problem with that, right? By the time that that would then allow the employer to sort of bide his time and wait until the statute of limitations expires and then avoid Lynn's food. I mean, that's the problem with that, right? Well, Your Honor, I think that's not our scenario, but I understand the hypothetical. If that were to have happened, there would be a larger statute of limitations problem with the employee having asserted those claims in the first place. So if the employer waited out that issue and the statute ran, that would just mean that the claim died, period, regardless of any question about who was right or who was wrong in that scenario. But in this case where we have a mix of those claims, there's, I don't think there's any authority to support what Mr. Graham is saying. Well, I'm sorry to interrupt, but unless the, well, I guess maybe it wouldn't matter if the employee had filed the claim first and you were in the middle of a negotiation. I guess maybe it would matter though, right? Because here's the thing, right? Let's say the employee files the claim in court, you all negotiate a settlement, and then the employee as part of that settlement dismisses the FLSA claim. And now the statute is run, but for whatever reason, the settlement is not submitted for review by the district court. There's a Lynn's food problem, and the rights under the FLSA are now gone. Your Honor, I think that would still be the same whether that FLSA claim gets filed or not. If the statute runs, then the statute runs, period. But it wouldn't be, right? And here's the reason why. Because if the employee had gone ahead and, or if you all had gone ahead and submitted it, then the court could have approved it or disapproved it, right? And the FLSA claims would still remain. Well, no, the FLSA, I mean, if the court approved it, they would have- Of course, if they had approved it. But if it had disapproved, the FLSA claims would still remain, and they would still be timely because the claim had been filed before the statute ran. Correct. But I guess I'm looking at it as, what's the penalty if you don't get court approval for the settlement? And I think the law is clear that the penalty is that those claims aren't released and that they can be reasserted. So there might be some statutory of, you know, there might be some like equitable tolling or something that happened to preserve claims that you thought had settled. There could be some statute of limitations remedy there for that unusual circumstance. I appreciate that. Do you agree with me that the most common circumstance here in the world today is that an employee is sitting down with their employer and there's a sheet of paper in front of them that says, look, we want you to settle all the claims that you have against us to get six months severance, something like that? I do. I do agree with that. And how would your rule resolve that? Well, I think that situation would be that if there was a global settlement with an employee at a point of termination or severance and the procedures for either getting the Department of Labor to supervise that or getting the court to approve that would mean that whatever that settlement was, if it was global, if it was general, it wouldn't include FLSA claims. By the way that the district court looked at this and I think the way that the law could most favorably be argued. So the employee would get to keep the money that they got, but then they would also get to bring their FLSA claims. Exactly. They would keep the money for the release of everything else related to their employment, which is essentially what happened here. You add in the contract claims and all those other claims. And by the way, this appeal is the first time in all of this litigation that Mr. O'Neill has referred to himself as an employee. This is primarily a breach of contract claim where he claimed to be an equity owner of more than 30% in this endeavor of CBD stores down in Tampa. That's a different issue. Let me ask you a question though. Yes. So you've now said that the way that this would be handled would be that there would be equitable tolling, right? That's an option, I assume. Okay. Would you concede that that would apply in this case? I mean, look, that's a tough thing for me to argue on or to admit on the fly. Well, it hasn't been argued in this case. Well, he doesn't want to bring the FLSA claims. Exactly. He's not trying to bring them up. And that's the whole point here. But it doesn't matter. The question is whether you would concede that under the circumstances here where you as the employer with a responsibility to obtain settlement. I understand you're saying he wasn't an employee. Leave that for another day. But you as the employer with a responsibility to obtain approval from the district court of your settlement arrangement didn't do so. And assuming he is in fact an employee, why wouldn't he be entitled to equitable tolling? So Your Honor, what I would say to that is I'm not at liberty to bind my client to any answer to that today. But what I would say is the record in the underlying case is that his FLSA damages are about $10,000 or $11,000. And if today my client could pay $10,000 or $11,000 to Mr. O'Neill on top of what's already been paid to have avoided hundreds of thousands of dollars in attorney's fees debating whether or not the release of non-FLSA claims was enforceable, I would tell my client to do it. And we would have been done with this thing. All right. Well, here's the reason that I raise this, right? Whatever we do is making a rule for the circuit. Everybody in the circuit has to follow it. And while equitable tolling is sort of a case-by-case kind of issue, if in fact we're saying that equitable tolling could resolve this problem, but in reality, we can't really apply it, if it doesn't, if it's, you know, it's a nice theory, but it doesn't actually work, then I think we still have a problem, right, with the expiration of the FLSA claims and the ability of the employer to avoid the requirement that the Supreme Court has made clear that the FLSA requires. What I would say respectfully is that if that problem still exists, I think it's a problem for a different case with a different set of facts. If Mr. O'Neill had brought his FLSA claim, I think this would be a different story, but he did not. I don't know that you can go down that road in this case on these facts that don't have that situation. Why not? Well, I think one of the problems, I think, is that... I mean, maybe he couldn't do it indefinitely, but why wouldn't it toll for the period, whatever period it is, I certainly couldn't do it indefinitely. But whatever the statute of limitation is, statute of limitations is for the FLSA, as of the time that you all began settlement negotiations, or possibly as of the time you entered the settlement, whatever, I mean, at some point, there's got to be a point, we stop the statute of limitations, and then, as of the point that the settlement is rejected, then it starts running again. Why isn't that something that could be done? And then at some point, it cuts off, because obviously, it is a limited period. Well, Your Honor, I do think that's an interesting hypothetical. In this case, the last of the payment that was claimed to be owed was in January of 2019. The settlement was reached in 2022. So even if we... So it wouldn't matter in this case? It wouldn't, because there's zero question that Mr. O'Neill and his attorney, by December of 2022, when they filed the supplemental proceeding, they knew about this argument that the court approval had not been received. And so, whatever equitable estoppel might have occurred in this case had stopped at that point, when they knew about these situations, knew they could have refiled, chose not to refile the FLSA claims, and then proceeded for years differently, while Mr. O'Neill is represented by counsel and makes a strategic decision not to do that. So respectfully, again, I can't answer all of the idiosyncrasies of the estoppel argument. His position is he doesn't want to bring his FLSA claims. That's clear by now. He doesn't want to do that. I guess, do you agree with me that if we rule in favor of the appellant here, that we will tell all of these people who signed their severance agreements that, in order to bring their FLSA claims, they will have to give all the money back, and that severance agreement will be entirely voided? I mean, that's his position, right? That's his position, and I think if that were— And there would be a statute of limitations problem there, too, for them, right? Because they will have signed an agreement, you know, possibly years have gone by. The same statute of limitations agreement petition, I'm sorry, problem arises whether we adopt his rule or reject his rule. It's just whether it applies only to the FLSA claims or whether it applies to all the claims. It does, and I think it creates a snowball for all the parties involved. Employers have no certainty and no clarity in that situation. Employees don't have clarity in that situation, and so the cleanest rule is one that divides the FLSA claims and the non-FLSA claims, and that's what the district court did here. And there is no authority from this court. I don't believe that would suggest that a global settlement like this, simply because it didn't get court approval for the FLSA claims, can somehow be invalidated in its totality. Lynn's food involved only FLSA claims. The Nall case involved only FLSA claims. Silva and Wolfe and Rakip only involved—excuse me, I think I said that wrong. They only involved FLSA claims. There is case law from other circuits, though, that suggests that when you have a mixed claim and you can't figure out what went to what, that the whole settlement can be invalidated. I'm not familiar with that case law. My impression is that the Eleventh Circuit has about the most stringent rule on court approval of FLSA settlements. That case law hasn't been cited or argued in the briefs. I'm a little at an inability to, I think, talk about that today. But I don't think that's the Eleventh Circuit's rule. I don't think there's any authority that says the entire settlement agreement should be invalidated in that circumstance. The facts of this case are that Mr. O'Neill received $50,000, and his damages on his FLSA claim were $10,000 or $11,000 at most. There's clearly a substantial part of that compensation that went to compromising his non-FLSA claims, where he alleged hundreds of thousands of dollars. And there's no reason under Lin's food why that should be invalidated, because that rule exists to protect vulnerable employees who lack the bargaining power against their employers, and that's not this situation. Before you run out of time, I'd love to hear your argument on the breach of contract issue. I'll say that in talking to my law clerk about this, both he and I were surprised to see that in Florida, it's probably not an affirmative defense. I told him that was not the last time he would be surprised by Florida law, but be that as it may, why is Mr. O'Neill incorrect that this didn't have to be an affirmative defense? So Your Honor, I do think it is an affirmative defense. The issue of contract performance in this case is the payment of the $50,000 in exchange for the release of claims. There is a separate obligation to maintain confidentiality, but that's a perpetual obligation that isn't an issue of performance. It's an independent covenant of the agreement that has separate consideration, $100. It has a separate enforcement mechanism. The confidentiality provision specifically says that a breach would subject the breacher to money damages, and so that confidentiality provision is not part and parcel of the underlying performance obligations that go to the contract itself. So if it's going to be raised, it's got to be raised as an affirmative defense, if it can be raised at all. And then, of course, there are the arguments— Isn't that a merits question, though? Doesn't it depend—wouldn't you have to make a merits decision on the contract about the nature of that clause? I don't think so. I think the plain language of the clause indicates that it's an independent covenant that is separately enforceable and not part of the underlying contract performance or the specific tit-for-tat that made up that agreement in the first place, the exchange of $50,000 for the release of claims. And there's case law in Florida that says when—if you have a breach argument, a prior material breach, but that is an independent covenant, not a dependent covenant, then that is not the type of breach that would invalidate the contract or prevent the initial party from filing a breach of contract claim. And Mr. O'Neill's only argument back to that is that it has to be clear in the language of the contract that that clause is independent, and here it is because it has separate consideration and it has a separate—by its own language, a separate enforcement mechanism of money damages for a violation. I also think that the district court was spot on in saying that there was no violation of the confidentiality provision in any case because the heavily redacted settlement agreement was filed in a court for purposes of court enforcement against discovery efforts that Mr. O'Neill was undertaking on released claims. Before you sit down, I want to ask you one other thing. With respect to the settlement agreement here, is there a problem under Florida law with respect to severability? The reason I ask this is because under Florida law, we have to determine whether the release of the FLSA claims is so central to the settlement agreement that it goes to the essence of the agreement and therefore would not be severable under Florida law. And so, I'm not sure how we can do that because there's not a clear breakout here. It doesn't say, you know, how much he's releasing, you know, how—he's releasing all of the claims total and then there's $50,000 for all of the claims. So, I don't know how we attribute that. How do we deal with the Florida law severability issue? Your Honor, I would have two answers to that. The first one would be that I think you can look at the contract. It doesn't say anything about the FLSA and you can take it at face value to say that the FLSA is not the essential part of the settlement. And if we're penalized because we didn't get court approval for that, then we can live with that, but it doesn't invalidate the entire agreement. The other point I would make is that I don't believe this is really an issue of severability. It's an issue of enforceability. And the analogy that I talk about in my briefs is like employment discrimination claims. If you were to have a general release of employment discrimination claims, but it did not have the notice provisions, the 21 days and the seven days to revoke your execution after you do it, then that wouldn't invalidate the entire agreement. It would only invalidate the release of age discrimination claims. Another way to look at this is just as federal law preemption, right? It has nothing to do with Florida severance law. It's just federal law says you have to go through a certain process to release your FLSA claims. And if you don't go through that process, the claims aren't released. It has nothing to do with what the contract says or severance or anything like that. I would agree, Your Honor. All right, thank you very much. Thank you. We'll hear again from Mr. Graham. Your Honors, I want to emphasize the two other issues that we've identified as reversible error. We've talked about the severability issue. We haven't talked about the refusal to allow the amendment of the pleading. Well, I think it's too late now. You can't bring up something new and rebuttal because it doesn't give your opponent the opportunity to address it. And we have it from the briefs. Okay. Then allow me to address the question of if the Lin's Food and the prior written notice requirement, I believe that it's not an independent clause. The settlement agreement on its face says confidential settlement agreement. It is an important and integral part of the agreement. And it is not a situation in which you can find anything in the settlement agreement that you can conclude that it's an independent clause. And that's what's required by Florida law. You look at the four corners and everything says that this is a dependent clause. All of these clauses work together. That's how the agreement was put together. They didn't even want to put it in the court files for the reason they want it to be confidential. For them to now say that it's an independent clause, I think, fails. And secondly... What is wrong with just saying, you know, they're stuck with whatever they paid on the settlement. You still get to bring your FLSA claims. And we're going to toll the statute of limitations for any period that you lost that was caused by their wrongful conduct. Well, as long as the court recognizes that there was fraudulent inducement into the contract, then that issue doesn't really arise. Because our belief is that what ought to happen here is we ought to be given an opportunity to amend our pleading and assert the fraudulent inducement. So as far as ultimately what happens here, is that I think that Mr. O'Neill should be given an opportunity to plead his case, and to allow for him to proceed. There's a problem, though, given that you didn't object to the magistrate judge's decision not allowing repleading, right? Right, and that's an Article III problem. I think that if we'd done nothing, under this court's rule, it's clear that absent the language in the order that provides the 14-day review, you know, objection process, that that invalidates that amendment order. Because that is not permitted by 636, by local rule in the middle district, and this court's circuit rule provides that if that language is in the order, then you're precluded from appealing. The opposite of that, of course, is that if it's absent from the order, then it's an Article III problem. We've cited cases. So you want us to resolve that claim by saying that magistrate judges are unconstitutional? No, they're constitutional, but there's a limitation as to what they can do. They cannot terminate litigation. They cannot dismiss with prejudice. And that was the effect of the dismissal order in this case. It denied Mr. O'Neill the right to amend his pleadings, and that order in itself was not properly issued and is clear error in and of itself. All right, thank you very much. And our next case for today is L.W. v. O'Neill.